# MOORE *v.* HEWITT.

---

PATENTS; INTERFERENCE; DILIGENCE.

In an interference proceeding involving an invention the purpose of which was to afford means of overcoming the negative electrode resistance of electric gas lamps, it was *held* that the senior party was entitled to an award of priority, as it appeared that, even if certain experiments made by the junior party from five to seven years before he filed his application amounted to reduction to practice, the fact that he had delayed filing his application until after he had seen a successful exhibition of the invention by the other party, and the further fact that, during the interval between his alleged reduction to practice and his filing date, he obtained forty-two patents for other inventions, showed inexcusable lack of diligence. (Following *Paul* v. *Hess*, 24 App. D. C. 462; *Seeberger* v. *Dodge*, 24 App. D. C. 476.)

No. 414. Patent Appeals. Submitted May 12, 1908. Decided June 9, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Affirmed.*

The facts are stated in the opinion.

*Mr. Joseph R. Edson* and *Mr. Henry C. Townsend* for the appellant.        ...

*Mr. Charles A. Terry* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal [by Daniel McFarlan Moore] from the decision of the Commissioner of Patents in an interference case awarding priority of invention to Peter Cooper Hewitt, the senior party. The issue is defined in the following counts:

"1. The combination, with an electrical translating device and a resistance device in series therewith, of a shunt across the circuit between the translating device and the reactance device, and a snap or quick-brake switch in said shunt, the reactance device being placed in operative relation to the switch, so as to operate the same when the main circuit is closed.

"2. The combination, with an electric gas lamp, of an electro-magnetically actuated circuit interrupter having its contacts in multiple with the lamp, and its magnet or coils in the supply circuit with the lamp and adapted to hold the interrupter contacts open by the current flowing through the lamp while the lamp is in action.

"3. The combination, with an electric gas lamp connected with a low potential source of energy through a circuit of self-induction of sufficient value to furnish a high potential current proper for starting said lamp, an interrupter for said circuit of induction having its contact in multiple with the lamp, and an electro-magnet for actuating said interrupter, said electro-magnet having its coils connected to the supply circuit and adapted to hold the interrupter contacts open by the current flowing through the lamp while the lamp is in action."

The Commissioner thus describes the invention: "The purpose of the invention is to afford means to overcome the negative electrode resistance of electric gas lamps. These lamps consist of a glass vessel containing air at low pressure or other gases. Within the glass vessel are two electrodes connected to the source of electrical current. Lamps of this character oppose a high resistance to the passage of the electrical current. The familiar Geissler tubes are operated by means of the intermittent high potential discharge obtained by placing them in the secondary circuit of an induction coil, the primary circuit being provided with the usual interrupter. While the resistance of lamps of this character cannot be overcome by a current of low potential, it has been found that such a current will form an arc between the electrodes if the initial resistance is momentarily broken down by a discharge of high potential."

Each of the three tribunals of the Patent Office has carefully reviewed the testimony in this case, and each has reached the conclusion that Hewitt is entitled to a judgment of priority.

The Examiner of Interferences, after reviewing Moore's testimony, reached the following conclusions: "That while developing his system of lighting by means of sparks or flashes produced by a rapidly interrupted current, some of the tubes accidentally arced. That Moore at first regarded this as a detriment, since it quickly destroyed the electrodes, and he proceeded to adjust the magnet to prevent it. That he conceived the possibility and desirability of producing a light on that principle, and later made experiments in that direction. That he met with poor success, and probably had little faith of perfecting such a system, for none of his tubes prior to 1902 were much, if any, more successful than the first, where the arcing occurred accidentally. That Moore met with much better success along other lines of electric lighting, and beyond a few desultory experiments did little with this system until after he became aware of the progress made by Hewitt in this line. * * * If it be assumed that Moore had a conception of the invention prior to his opponents, in the absence of a prior reduction to practice it can avail him only in case he shows due

diligence at and subsequent to the appearance of his opponents in the field. As shown by the analysis of the testimony, heretofore noted, Moore did little, and appears to have made no advance from the time of his 1897 experiments with the apparatus introduced in evidence until the filing of his application in 1902, after he had become aware of the efforts of Hewitt along the same line. * * * Moore has failed to show the necessary diligence, and in either case the award of priority must be against him."

The Examiners-in-Chief found that there was sufficient testimony to prove reduction to practice by Moore in 1897 or 1898. The Board held, however, that Moore was clearly lacking in diligence, and that his conduct "shows a deliberate concealment of the invention of such a character as to prevent him from availing himself of his early reduction to practice." The Board further said: "After the experiments in 1897 and 1898, which have been referred to, Moore devoted his attention to other forms of devices, and did nothing further with this invention until 1902, when he filed his present application, and after he had seen some of Hewitt's devices in operation."

The Commissioner's review of the testimony is a very thorough and impartial one, and his conclusions are adverse to Moore, both on the question of reduction to practice and of priority of invention. The Commissioner states: "During the period between 1895, when Moore claimed to have made the invention in issue, and May 6, 1902, when he filed the application involved in this interference, he filed forty-two applications which matured into patents. The invention here in issue is not described in any of these patents;" and that on April 12, 1901, Moore witnessed an exhibition by Hewitt, the appellee herein, of lamps of the character involved in this issue. The Commissioner finally concludes: "The imperfect operation of the lamps made by Moore, and the fact that he did not file his application until seven years after the date when he claims to have made the invention, during which period he was active in developing other inventions, lead to the conclusion that his operations amounted to nothing more than abandoned

experiments, and that he is entitled to no date of invention prior to the filing of his application."

We do not deem it necessary to again review the testimony in this case. It is sufficient to say that we have examined the record with care, and fully concur in the conclusion reached by the Commissioner. If Moore reduced this invention to practice in 1897, as he now contends, his delay until May, 1902, in filing his application, after he had seen a successful exhibition of the invention by his opponent, is inexcusable. *Paul* v. *Hess,* 24 App. D. C. 462; *Seeberger* v. *Dodge,* 24 App. D. C. 476. The fact that during this interval he filed forty-two applications which matured into patents lends itself to the conclusion reached by the Commissioner, that he had not conceived the invention when he saw it publicly exhibited by Hewitt.

The decision of the Commissioner was clearly right, and therefore is affirmed. The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, in accordance with law. *Affirmed.*